UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MIGUEL A. LAURENZANA and
MERARI A. LAURENZANA,
    Plaintiffs,

vs.                                                                   No. 1:14-cv-159-JAP/KBM

**COUNTRYWIDE KB HOME LOANS,
A COUNTRYWIDE MORTGAGE VENTURES LLC
SERIES, BANK OF AMERICA CORPORATION,
SUCCESSOR TO COUNTRYWIDE MORTGAGE
VENTURES, LLC SERIES, AND BAC HOME LOANS
SERVICING, LP, F/K/A/ COUNTRYWIDE HOME
LOANS SERVICING, LP,**
    Defendants.

**MEMORANDUM OPINION AND ORDER**

On February 20, 2014, Defendants, Countrywide Mortgage Ventures, LLC d/b/a/ Countrywide KB Home Loans, Bank of America, N.A., and BAC Home Loans Servicing, LP (Defendants)[1] filed a motion to dismiss Plaintiffs' complaint. *See* DEFENDANTS MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 4(M) AND 12(B) (Doc. No. 3) (Motion to Dismiss). Defendants contend that (1) the New Mexico rule regarding compulsory counterclaims bars Plaintiffs from pursuing this lawsuit because Plaintiffs had an opportunity to assert these claims in a prior foreclosure action, (2) Plaintiffs' claims fall outside the applicable statute of limitations, and (3) Plaintiffs' claims fail as a matter of law. Plaintiffs oppose the motion. *See* RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (Doc. No. 10). The Court is sympathetic to Plaintiffs' plight. However, Plaintiffs' claims, which arise from the 2007

---

[1] Defendants assert that Bank of America, N.A. is the successor by merger to BAC Home Loans Servicing, LP, so that there are in fact only two Defendants: Countrywide Mortgage Ventures, LLC and Bank of America, N.A. Motion to Dismiss at 1. However, for the purposes of this motion, the exact identity and number of Defendants is not crucial.

1

origination of their home mortgage loan, are barred by the statute of limitations. Therefore, the Court will dismiss Plaintiffs' complaint.

## BACKGROUND

For the purposes of ruling on Defendants' Motion to Dismiss, the Court assumes the following allegations from Plaintiffs' Complaint to be true.[2] In early 2007, Plaintiffs decided to buy a new home located at 6808 Vista Del Sol Drive. Complaint for Fraud, Negligent Misrepresentation, Violation of the Home Loan Protection Act, Violation of Unfair Practices Act, and Breach of the Implied Covenant of Good Faith and Fair Dealing, Exhibit B to NOTICE OF REMOVAL (Doc. No. 1-2) (Complaint) ¶¶ 17-18. The seller of the home, KB Homes New Mexico Incorporated, referred Plaintiffs to Defendant Countrywide Mortgage Ventures, LLC (Countrywide) to obtain financing for the purchase. *Id.* ¶ 20. With the help of a Countrywide representative, who filled in the required information, Plaintiffs executed a loan application on March 19, 2007. *Id.* ¶¶ 22-24. This loan application incorrectly stated that Plaintiffs' monthly income was $9,333.3 when in fact their monthly income was closer to $4,000. *Id.* ¶ 26. It also included other misstatements about Plaintiffs' assets. *Id.* Nonetheless, Countrywide eventually approved Plaintiffs for a $322,798 loan. *Id.* ¶ 33. On July 2, 2007, Plaintiffs signed the Note and Mortgage. *Id.* ¶ 35.

In March 2009, Plaintiffs became delinquent on their mortgage payments. *Id.* ¶ 46. Shortly thereafter, Defendant BAC Home Loans Servicing, LP (BAC), the loan servicer, initiated a foreclosure action against Plaintiffs. *Id.* ¶¶ 12, 48. On November 6, 2009, BAC moved for default judgment. *Id.* ¶ 54. The Court granted this motion, *id.* ¶ 12, and a foreclosure sale was

---

[2] In ruling on a motion to dismiss, the Court must accept as true all adequately pleaded factual allegations contained in the complaint and then determine whether these allegations plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

scheduled in February 2010, *id.* ¶ 55. Because Plaintiffs did not receive notice of the foreclosure action, Plaintiffs remained ignorant of the foreclosure during this time period. *Id.* ¶¶ 48, 54, 55.

Then, on May 13, 2010, Plaintiffs received a letter from Defendants with a notice to vacate the property within three days. *Id.* ¶ 60. After some negotiation, Plaintiffs agreed to vacate the premises by May 28, 2010, which Plaintiffs subsequently did. *Id.* ¶ 62. Years later, on January 9, 2014, Plaintiffs filed a complaint in the Second Judicial District Court for the District of New Mexico based on Defendants' alleged misconduct during the origination of Plaintiffs' home loan. On February 20, 2014, Defendants removed the case to federal court. *See* NOTICE OF REMOVAL (Doc. No. 1).

## DISCUSSION

### A. Count 1 & Count 2: Fraud and Misrepresentation

Plaintiffs allege that Defendants fraudulently induced them into obtaining a mortgage loan financed by Defendants, on which Plaintiffs later defaulted. The crux of Plaintiffs' claim is that Defendants knew (or should have known) Plaintiffs could not afford to repay Defendants, but nonetheless approved Plaintiffs for a $322,798 mortgage loan. Plaintiffs identify two "misrepresentations" that form the basis for their fraud and negligent misrepresentation claims: (1) Defendants advertised their company as a conservative lender of "high quality loans" whose practices could be trusted, and (2) representatives of Defendants falsified statements on Plaintiffs' loan application concerning Plaintiffs' assets and income in order to ensure that Plaintiffs' qualified for the mortgage loan.

In New Mexico, the statute of limitations for actions sounding in fraud is four years. N.M. Stat. Ann. § 37-1-4. The statute of limitations does not begin to accrue, however, until the aggrieved party discovers "such facts as would, on reasonable diligent investigation, lead to

knowledge of the fraud or other injury." *Wilde v. Westland Dev. Co.*, 148 N.M. 627, 634 (N.M. Ct. App. 2010) (internal citations omitted); *see also Tiberi v. CIGNA Corp.*, 89 F.3d 1423, 1430 (10th Cir. 1996) ("Normally, the limitations period begins to run when the plaintiff discovers the fraud or when, with reasonable diligence, the plaintiff could have discovered the fraud.") (internal citation omitted). In other words, a cause of action for fraud arises at the point in time at which a reasonable person should have known of the fraud, even if the plaintiff has no actual knowledge of the fraud. *Wilde*, 148 N.M. at 634. For example, in *Ambassador East Apts. Investors v. Ambassador East Inv.*, 106 N.M. 534, 536 (N.M. Ct. App. 1987), the New Mexico Court of Appeals held that a buyer's claim for fraud based on a seller's misrepresentation of the square footage of an apartment building accrued at or before closing because the buyer had access to correct information about the square footage. At closing, the buyer had viewed an expanded copy of an appraisal that "clearly and correctly" indicated the number of rentable square feet in the apartments. *Id.*

Here, it is undisputed that Plaintiffs executed the loan application, which forms the basis for their fraud and misrepresentation claims, in March 2007. At this time, Plaintiffs clearly had access to all the information necessary to uncover Defendants' alleged fraud. Simply by reading the loan application Plaintiffs should have noticed that their income was inflated by more than 100%. In fact, by signing the loan application, Plaintiffs affirmed that the inflated information in the loan application concerning their income and assets was correct. Like the buyer in *Ambassador East Apts.*, Plaintiffs could have uncovered Defendants' alleged fraud with little effort, merely by reading the documents provided to them during the loan origination process. Furthermore, discovery of significant misstatements in the loan application would have put Plaintiffs on notice that Defendants' loan practices were not altogether trustworthy. For this

reason, the Court concludes that Plaintiffs' fraud and misrepresentation claims accrued March 2007 and, therefore, fall outside the four-year statute of limitations.

### B. Count 3: The Home Loan Protection Act

Count 3 of Plaintiffs' complaint alleges that Defendants violated the New Mexico Home Loan Protection Act (HLPA), a statute which requires creditors to document and consider a borrower's "reasonable ability to repay" prior to offering the borrower a home loan. N.M. Stat. Ann. § 58-21A-4 (C). Additionally, the HLPA specifically prohibits "misrepresenting, inflating or fabricating, or encouraging a borrower to misrepresent, inflate or fabricate, the source or amount of a borrower's actual income or assets." N.M. Stat. Ann. § 58-21A-4 (N). The statute of limitations for asserting a violation of the HLPA in an original action depends on whether the loan is a high-cost home loan. For high-cost home loans the statute of limitations is six years from the date of closing; for all other home loans the statute of limitations is three years from the date of closing. N.M. Stat. Ann. § 58-21A-11 (B).

Plaintiffs executed the Note and Mortgage on July 2, 2007, Complaint ¶ 35, more than six years prior to instituting this lawsuit. As a result, even if the home loan constituted a high-cost home loan, Plaintiffs' HLPA claims are barred by the statute of limitations.

### C. Count 4: The Unfair Practices Act

Count 4 of Plaintiffs' complaint asserts a claim under the New Mexico Unfair Practices Act (UPA) that is derived from Plaintiffs' HLPA claim. As Plaintiffs point out, a violation of the HLPA also constitutes a violation of the UPA. Complaint ¶ 94 (citing N.M. Stat. Ann. § 58-21A-12). However, the UPA does not extend the time period for maintaining Plaintiffs' HLPA/UPA claim. Claims under the UPA are subject to a four-year statute of limitations. *See Nance v. L.J. Dolloff Assocs.*, 138 N.M. 851, 856 (N.M. Ct. App. 2005) (the four-year limitations period

contained in N.M. Stat. Ann. §37-1-4 applies to UPA claims). Because Plaintiffs' UPA claim is based on violations of the HLPA, which occurred at the time of the origination of the loan, it is clear that Plaintiffs' claim falls outside the four-year statute of limitations for UPA claims.[3]

### D. Count 5: Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' final claim is based on the same conduct as Plaintiffs' Count 1-4 claims. Plaintiffs allege that Defendants violated the implied covenant of good faith and fair dealing during the "initiation and origination of Plaintiffs [sic] loan" by encouraging Plaintiffs to accept a home loan Defendants knew Plaintiffs could not afford. Response at 15. In general, "actions based on written contracts must be brought within six years of an alleged breach." *Cont'l Potash, Inc. v. Freeport-Mcmoran, Inc.*, 115 N.M. 690, 699 n.7 (1993) (citing N.M. Stat. Ann. § 37-1-3). Here, the alleged breach occurred in 2007 at the time Plaintiffs' home loan was originated. Clearly, Plaintiffs' contract claim falls outside the six-year statute of limitations. Moreover, there is no basis for equitably tolling the limitations period for the breach of contract claim. As previously discussed, Plaintiffs had access to the information necessary to uncover Defendants' alleged fraudulent behavior concerning the origination of Plaintiffs' home loan in 2007.

---

[3] In Count 4 of the Complaint, Plaintiffs allege that Defendants failed to properly service Plaintiffs' loan in accordance with the strictures of the UPA. Complaint ¶ 96. According to Plaintiffs, Defendants refused to accept partial payments, neglected to process Plaintiffs' loan modification application, disregarded short sale offers, and failed to provide loss mitigation services. *Id.* However, in the briefing, Plaintiffs do not discuss these allegations or argue that the limitations period for bringing these claims differs from the limitations period for the claims arising out of the origination process. Furthermore, it is not clear to the Court how Plaintiffs' complaints about Defendants' dilatory method of servicing their loan would support a claim under the UPA. "The gravamen of an unfair trade practice is a misleading, false, or deceptive statement. . ." *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 439 (N.M. Ct. App. 2007). To the extent Plaintiffs' have asserted a UPA claim based on Defendants' servicing of their home loan, the Court construes Plaintiffs' Response as abandoning this claim. If this is a misunderstanding of Plaintiffs' position, Plaintiffs are free to file a motion to reconsider.

E.  **Tolling the Statue of Limitations: Fraudulent Concealment**

Plaintiffs ask the Court to toll the applicable statute of limitations for all of Plaintiffs' claims based on the doctrine of fraudulent concealment. "To toll the statute of limitations under the doctrine of fraudulent concealment, [a plaintiff is] required to prove (1) [the defendant] was aware of his alleged [misconduct] and concealed it from [p]laintiff. . . and (2) [p]laintiff lacked knowledge of [the] cause of action and could not have discovered it by exercising reasonable diligence during the statutory period." *Blea v. Fields*, 138 N.M. 348, 358 (2005). While Plaintiffs acknowledge this two-part burden, Plaintiffs focus exclusively on Defendants alleged attempts to conceal their misbehavior. Response at 9-11. Plaintiffs never offer a satisfactory explanation, either in the allegations in the Complaint or in the briefing, why Plaintiffs were prevented from uncovering Defendants' alleged manipulation of Plaintiffs' loan application within the applicable limitations period. Plaintiffs were in possession of a copy of their loan application in 2007. If Plaintiffs had reviewed the application and discovered that their income and assets were misstated, Plaintiffs would have been on notice that they might not qualify for the loan offered by Defendants. Plaintiffs' failure to discover their claims within the limitations period is directly attributable to Plaintiffs' failure to read the loan application before they signed it.

IT IS THEREFORE ORDERED THAT:

1. DEFENDANTS MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 4(M) AND 12(B) (Doc. No. 3) is GRANTED.

2. Plaintiffs' Complaint is dismissed because it is barred by the statute of limitations.

_____
SENIOR UNITED STATES DISTRICT JUDGE